UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER JACKSON,

                                    Petitioner,

                - against -

R. ERCOLE, Superintendent, Green Haven
Correctional Facility,

                                    Respondent(s).

07 Civ. 0457 (KMK) (PED)

**REPORT AND
RECOMMENDATION**

TO:   THE HONORABLE KENNETH M. KARAS,
      UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Christopher Jackson ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, from his May 15, 2002 conviction entered in Orange County Court (De Rosa, J.). Petitioner was convicted, after a trial by jury, of two counts of attempted murder in the first degree and one count of reckless endangerment in the first degree, and sentenced, *inter alia*, to two consecutive terms of twenty years to life imprisonment on the attempted murder convictions and a concurrent term of two and one-third to seven years' imprisonment on the reckless endangerment conviction. For the reasons set forth below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND

### A.   The Crime and Police Investigation

On July 3, 2001, shortly after 11:00 p.m., in the City of Newburgh, two uniformed police officers responded to a call after receiving a report that individuals in the area were trading weapons. (Aff. in Opp. to a Pet. for a Writ of Habeas Corpus, at ¶ 2 (hereinafter "Aff. in Opp.") (Docket No. 20)). The individuals were described as two black males, one wearing jeans and a

white t-shirt, and the other wearing shorts, a striped shirt, and a Yankees baseball cap, who were outside a specific location. (Resp't Mem. of Law, at 7 (hereinafter "Resp't Mem.") (Docket No. 7)). The officers thereafter saw two men fitting the description; Petitioner was later identified as the man that had been wearing the striped shirt. (Id. at 8). The officers approached the men, requested that Petitioner put down two shopping bags that he carried, and attempted to pat Petitioner down, when he suddenly fled. (Id.) The officers pursued Petitioner on foot. (Id. at 9). The officers and civilian witnesses then either saw Petitioner pull a gun from his waistband, turn, aim, and fire several shots at the officers, who were about ten to fifteen feet away at the time, or otherwise heard shots fired. (Id. at 9-10). Petitioner was able to escape, but police recovered a .32-caliber revolver and clothing from underneath a nearby porch. (See id. at 11-13). While forensic testing later revealed that the gun was operable, no fingerprints were found on it. (Id. at 13-14). However, DNA testing from certain clothing recovered identified Petitioner to the extent that he could not be excluded. (See id. at 14-15).

The next day, one of the officers involved was shown a photo array. (Dec. 18, 2001 Tr., at 7-8). Although he narrowed down the six photos to two – one of which was in fact Petitioner – he could not identify Petitioner out of those two. (Id. at 8-9, 14-15). Three other civilian witnesses later identified Petitioner in separate photo arrays. (Id. at 4-7, 24-27, 30-33). After the first civilian witness positively identified Petitioner, a prior arrest photo of Petitioner was then posted in the police department in order to alert officers that the man was an at-large suspect in a crime. (Id. at 9-10). After this single photo was posted, the officer who had previously failed to identify Petitioner told the investigating detective that, although he was not one hundred percent sure, he believed the arrest photo to be the person who had shot at him. (Id. at 11).

Petitioner was indicted on two counts of attempted murder in the first degree, in violation

2

of N.Y. Penal Law §§ 110.00 and 125.27(1)(a)(i)-(b); two counts of attempted assault in the first

degree, in violation of N.Y. Penal Law §§ 110.00 and 120.10(1); two counts of attempted

aggravated assault upon a police officer, in violation of N.Y. Penal Law §§ 110.00 and 120.11;

one count of criminal possession of a weapon in the second degree, in violation of N.Y. Penal

Law § 265.03(2); one count of criminal possession of a weapon in the third degree, in violation

of N.Y. Penal Law § 265.02(4); and one count of reckless endangerment in the first degree, in

violation of N.Y. Penal Law § 120.25.  (Indictment (attached to Resp't Mem., at Ex. 1); Bill of

Particulars (attached to Resp't Supp. Mem. (Docket No. 21), at Ex. 20)).[1]

**B.**     **Pre-Trial Hearings**

The State provided four notices to Petitioner, pursuant to N.Y. Crim. Proc. Law §

710.30,[2] of the State's intent to present identification evidence at trial.  (See Ex. 1).  Petitioner

moved to suppress the identifications, (see Ex. 2), and the court ordered a pretrial Wade[3]

hearing, (see Nov. 15, 2001 Decision and Order (Ex. 4)).  After testimony by the officers who

had conducted the photo arrays, the court found all identification procedures involving the

civilian witnesses were not unduly suggestive.  (Dec. 18, 2001 Tr., at 37-39).  The court also

---

[1] All exhibits cited herein are attached to Resp't Mem., (Docket No. 7 (containing exhibits 1-19)), or Resp't Supp. Mem., (Docket No. 21 (containing exhibits 20-29)).

[2]

> Whenever the people intend to offer at a trial . . . testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

N.Y. Crim. Proc. Law § 710.30(1).

[3] United States v. Wade, 388 U.S. 218 (1967).

3

determined that the six-photo array shown to the officer was not unduly suggestive, and that no identification had actually occurred; however, it also held that, if Petitioner's counsel sought to suppress it, the People would be required to produce further testimony to establish that any in-court identification by this officer came through an independent source, and not merely from his viewing of the single arrest photo. (Id.) Petitioner's trial counsel, however, stated that he did not want this identification suppressed, and the Court ruled that the officer would be free to make an in-court identification.[4] (Id. at 40-41, 47).

Petitioner's trial counsel also made, by oral application, a motion for the court to order a competency examination pursuant to N.Y. Crim. Proc. Law § 730.30.[5] (Jan. 28, 2002 Tr., at 2-3). He stated that Petitioner had a history of receiving psychiatric care and that correctional staff had taken away his psychiatric medications. (Id.) He also stated that Petitioner believed he was being poisoned by corrections staff and admitted to hearing voices. (Id. at 3). The court then asked Petitioner a series of questions and determined that Petitioner understood who his trial counsel, the prosecutor, and the judge were, what their respective roles were, that any incidents that happened to Petitioner were forms of harassment by the corrections staff, and therefore, that Petitioner was not incompetent to assist in his own defense. (Id. at 3-8).

## C.   **Trial and Sentencing**

---

[4] It appears from the transcript of the Wade hearing that the second officer targeted in the shooting was also shown and/or identified Petitioner in certain photos. However, the details and circumstances surrounding these photos and the identification, if any, are not clear from the record. (See generally Dec. 18, 2001 Tr., at 41, 47). Notwithstanding, after learning about the circumstances involving the second officer's apparent identification, the court went on to rule that all witnesses would be permitted to make in-court identifications of Petitioner. (Id. at 41, 47).

[5] A trial court must order a competency exam "when it is of the opinion that the defendant may be an incapacitated person." N.Y. Crim. Proc. Law § 730.30(1).

At trial, Petitioner's defense attorney moved the court to direct a verdict of acquittal based on the State's failure to present a prima facie case. (See Mar. 15, 2002 Tr., at 29-35). Counsel argued that no evidence was presented to support the State's theory of the case – that Petitioner had possessed the specific .32-caliber revolver found and had used this weapon to shoot at the officers. (See id.) The court denied the motion. (Id. at 39). After the jury was charged, Petitioner's counsel objected and argued – with respect to the charges for attempted assault in the first degree, attempted aggravated assault on a police officer, and criminal possession of a weapon in the second and third degrees – that because the indictment stated that these offenses had been accomplished with a loaded .32-caliber revolver, the court was required to instruct the jury that possession of such a weapon is an additional element of those crimes. (Id. at 97-100; see Ex. 1). The court sustained the objection and re-instructed the jury accordingly. (Mar. 15, 2002 Tr., at 106-08). Counsel also objected to the charge for the remaining counts and argued that because the State's theory of the case was that Petitioner had shot at the officers with this gun, the jury had to so find. (See id. at 111). The court denied this request because, unlike the other charges, the indictment did not specify the method by which these offenses were committed. (Id. at 113).

On March 18, 2002, the jury returned a verdict finding Petitioner guilty of two counts of attempted murder in the first degree and one count of reckless endangerment in the first degree, and acquitting him of the other counts charged in the indictment. (Id. at 114-18). Petitioner thereafter moved to set aside the jury's verdict pursuant to N.Y. Crim. Proc. Law § 330.30[6] on

---

[6] "At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon . . . [a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an

the ground that the jury's verdict was against the weight of the evidence.  (Not. of Mot. (Ex. 5);

Aff. in Supp. of Mot., at ¶ 16 (Ex. 5)).  Petitioner argued, without citing authority, that the jury

should have been instructed that in order to find him guilty of these counts, they first needed to

find that he had possessed the gun beyond a reasonable doubt.  (See Aff. in Supp. of Mot., at ¶¶

4-5, 9-16).  The court denied the motion and determined that "none of the crimes for which the

defendant was convicted required the jury to find that defendant possessed that handgun," and

therefore that the jury charge had been proper and the verdict not against the weight of the

evidence or otherwise inconsistent.  (May 15, 2002 Decision and Order, at 3 (Ex. 7)).  The court

sentenced Petitioner to consecutive terms of twenty years to life on the attempted murder counts

as well as a concurrent term of two and one-third to seven years on the reckless endangerment

count.  (May 15, 2002 Tr., at 15-16).

**D.**      **Direct Appeal**

Petitioner, through his appellate counsel,[7] appealed his conviction to the New York State

Appellate Division, Second Department, on the following grounds: (1) the State failed to provide

notice of a "confirmatory" identification by police prior to his Wade hearing; (2) the trial court

erred in finding Petitioner competent without first ordering a competency exam; (3) the jury's

verdict was repugnant; (4) Petitioner's conviction was against the weight of the evidence; (5) the

evidence was legally insufficient to convict Petitioner of the charges; (6) the sentence was harsh

and excessive; and (7) Petitioner received ineffective assistance of trial counsel for failure to

pursue an alibi defense.  (See Br. of Appellant (Ex. 8)).  The Second Department affirmed the

---

appellate court."  N.Y. Crim. Proc. Law § 330.30(1).

[7] Petitioner was represented by different counsel on appeal.

6

judgment in a written decision on June 20, 2005.  People v. Jackson, 796 N.Y.S.2d 543 (App.

Div. 2005).  Petitioner then sought leave to appeal to the New York State Court of Appeals, and

leave was denied on August 29, 2005.  People v. Jackson, 5 N.Y.3d 807 (2005).  Petitioner did

not seek a writ of *certiorari* to the United States Supreme Court.  (See Pet. Under 28 U.S.C. §

2254 for Writ of Habeas Corpus by a Person in State Custody, at 3 (hereinafter "Pet.") (Docket

No. 2)).

**E.      State Collateral Proceedings**

On or about November 12, 2006, Petitioner, proceeding *pro se*, moved before the Orange

County Court for a motion to set aside the judgment of his conviction pursuant to N.Y. Crim.

Proc. Law § 440.10 on the grounds that the court's charge to the jury violated his rights to due

process under both federal and state law.  (Ex 12)  The motion was denied on February 20, 2007.

(Feb. 20, 2007 Decision and Order (Ex. 15)).  The Second Department denied leave to appeal on

March 14, 2007.  (Decision and Order on Appl. (Ex. 16)).

On or about October 26, 2007, Petitioner, proceeding *pro se*, then moved before the

Second Department for a writ of *error coram nobis* for ineffective assistance of appellate

counsel on the grounds that counsel had been deficient for failure to include on direct appeal the

due process claim subsequently raised in the § 440.10 motion.[8]  (See Not. of Mot. (Docket No.

14); Mem. of Law (Docket No. 15)).  The Second Department denied Petitioner's request on Jan.

22, 2008.  People v. Jackson, 849 N.Y.S.2d 164 (App. Div. 2008).  Petitioner's application for

leave to appeal this decision to the New York State Court of Appeals was denied on July 8,

2008.  People v. Jackson, 10 N.Y.3d 960 (2008).

---

[8] Petitioner additionally re-raised his jury instruction argument within his *error coram nobis* petition.

**F.**     ___Habeas Corpus___ **Proceedings**

On December 6, 2006, Petitioner filed a writ of *habeas corpus* in which he asserted each ground raised on direct appeal and in his § 440.10 motion.[9]  (See Pet.)  On June 18, 2007, Petitioner's request to stay the proceedings in order to exhaust his ineffective assistance of appellate counsel claim was granted.  (Docket No. 8).  On June 17, 2009, I granted Petitioner's request to expand his *habeas* petition in order to include the claims set forth in his *error coram nobis* application and I deemed those claims incorporated into the petition.  (Docket No. 19). Accordingly, Petitioner raises the following claims:

> (1) the State failed to provide notice of a "confirmatory" identification by police prior to his Wade hearing;
>
> (2) the trial court erred in finding Petitioner competent without first ordering a competency exam;
>
> (3) the jury's verdict was repugnant;
>
> (4) the conviction was against the weight of the evidence;
>
> (5) the evidence was legally insufficient evidence to convict Petitioner of the charges;
>
> (6) the sentence was harsh and excessive;
>
> (7) the jury's instructions violated due process;
>
> (8) ineffective assistance of trial counsel for failure to pursue an alibi defense; and
>
> (9) ineffective assistance of appellate counsel.

## III. DISCUSSION

**A.**     **The AEDPA Standard of Review**

---

[9] The petition was timely filed.  See 28 U.S.C. § 2244(d)(1)-(2).

Before this Court can determine whether Petitioner is entitled to federal *habeas corpus* relief, I must first determine the proper standard of review under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") for each of Petitioner's claims.  28 U.S.C. § 2254(d)(1)-(2).  This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.  Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's

9

case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B.   **Exhaustion Requirement**

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)). A claim may be "fairly presented" to the state courts, even if the petitioner has not

cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations, (c)
> assertion of the claim in terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).  A *habeas* petitioner

who fails to meet a state's requirements to exhaust a claim will be barred from asserting that

claim in federal court, absent a showing of cause and prejudice, or a fundamental miscarriage of

justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a

federal claim be presented to a state court if it is clear that the state court would hold the claim

procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation

omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the

State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.

See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural

default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

11

innocence," Schlup v. Delo, 513 U.S. 298 (1995)), the petitioner's claim will remain unreviewable by a federal court.

## C.   Procedural Default

Comity and federalism also demand that a federal court abstain from review of a *habeas* claim "when a state court declined to address a prisoner's federal claim[ ] because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730 (1991); see also Harris, 489 U.S. at 260 (when a state has "independent and adequate state grounds" for dismissing a claim, federal courts must be cognizant of comity and federalism). In other words, absent a showing by the petitioner of cause and prejudice or a fundamental miscarriage of justice, a state court's reliance on a state procedural rule to deny a claim constitutes "an adequate and independent finding of a procedural default [and] . . . bar[s] federal habeas review of the federal claim." Harris, 489 U.S. at 262.

## D.   Analysis of Petitioner's Claims

### 1.   *Claims Raised on Direct Appeal*

#### a.   Identification Procedure Claim

Petitioner asserts that the State failed to provide Petitioner with notice of the nature of a prior identification. (Br. of Appellant, at 9-10).[10] Respondent argues that the claim presents a question of state law only and is therefore unreviewable by this Court upon *habeas* review. (Resp't Mem., at 16-21).

Petitioner's claim that the State provided insufficient notice, or that the state courts erred

---

[10] In support of the claims raised in his *habeas* petition, Petitioner has attached his state court appellate brief and § 440.10 motion papers to the petition. Accordingly, I cite to those original documents herein.

12

in applying N.Y. Crim. Proc. Law § 710.30 is, without more, purely a matter of state law, and

thus presents no federal question cognizable upon federal *habeas* review.  28 U.S.C. § 2254(a);

Coleman, 501 U.S. at 729; Wainwright v. Sykes, 433 U.S. 72, 81 (1977); see Dotson v. Ercole,

2009 WL 1615997, at *2 (S.D.N.Y. June 9, 2009) ("[t]he Constitution does not guarantee a right

to advance notice of identification testimony");[11] see also, e.g., Brown v. Woods, 2010 WL

2605744, at *4 (S.D.N.Y. June 29, 2010) (*habeas* claim that the state did not provide sufficient

notice that a witness would make an in-court identification under § 710.30 "raises solely an issue

of state law"); Dotson, 2009 WL 1615997, at *2 (state court's finding that no pretrial

identification had occurred, and thus that no notice was required under § 710.30, presents a

question of state law only, which is not cognizable upon federal *habeas* review); Espinal v.

Duncan, 2000 WL 1774960, at *3 (S.D.N.Y. Dec. 4, 2000) (claim that the state introduced

evidence at trial in violation of the notice provision in § 710.30 is a state law error not

reviewable by a federal *habeas* court).  Accordingly, this claim must be denied.

> **b.    Competency Claim**

Petitioner's second claim challenges the constitutionality of the trial court's denial of his

counsel's request that the court order a competency examination pursuant to N.Y. Crim. Proc.

Law § 730.30.  (See Br. of Appellant, at 11-15).  Respondent argues that the trial court's factual

determination that Petitioner was competent should not be disturbed, and that Petitioner's claim

is otherwise meritless.  (See Resp't Mem., at 23-25).

Compelling an incompetent person to stand trial violates that individual's rights to assist

in his defense, consult with counsel, and due process.  Cooper v. Oklahoma, 517 U.S. 348, 354

---

[11] Copies of unreported cases cited herein will be mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

13

(1996); Drope v. Missouri, 420 U.S. 162, 171-72 (1975); Pate v. Robinson, 383 U.S. 375, 385 (1966); see also, e.g., Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992). The failure of a court to order procedures to determine a criminal defendant's competency, when constitutionally required, is in error. See Nicks, 955 F.2d at 167. A court will be constitutionally required to inquire into the individual's competency only where "there is a 'reasonable ground' for believing that the defendant may be incompetent to stand trial." Silverstein v. Henderson, 706 F.2d 361, 369 (2d Cir. 1983) (quoting United States ex rel. Roth v. Zelker, 455 F.2d 1105, 1108 (2d Cir. 1972); see also Untied States v. Nichols, 56 F.3d 403, 414 (2d Cir. 1995) (due process requires further inquiry "only if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent"). However, because a state court's determination of the competency of a criminal defendant is a question of fact, upon *habeas* review, a federal court may overturn the decision only if the state court's determination was unreasonable. Demosthenes v. Baal, 495 U.S. 731, 735 (1990) (per curiam); see 28 U.S.C. § 2254(d)(2).

In this case, after Petitioner's trial counsel informed the court the bases for his concern, the court questioned Petitioner about his understanding of the nature of the proceeding against him, the roles of the judge, prosecutor, and defense attorney, and his assertions regarding events occurring at the correctional facility. (Jan. 28, 2002 Tr., at 6-8). The court determined that Petitioner understood the nature of the proceedings, and that he believed that, whatever experiences he may have had at the jail, they were forms of harassment by jail staff. (Id. at 8). In light of this evidence, the court's factual findings are reasonable, and because Petitioner has not presented any evidence to the contrary – much less clear and convincing – these findings are presumed accurate. See, e.g., Harris v. Kuhlmann, 346 F.3d 330, 351-52 (2d Cir. 2003) (state court's determination of competency, when evidence showed low intelligence, a head injury,

14

bizarre answers to the court's questions, and trial counsel's concerns about competency, was a

not an unreasonable determination and did not violate due process, especially when the

petitioner's demeanor and credibility was a factor to be considered by the trial court and not

easily determined from the record).  Accordingly, this claim must be denied.

### c.  <u>Repugnant Verdict Claim</u>

Petitioner argues that the jury's verdict convicting him of attempted murder in the first

degree was inconsistent with the verdict of acquittal for the other charges requiring, as essential

elements, possession of the gun.  (<u>See</u> Br. of Appellant, at 18-19).  Respondent contends that this

claim is not cognizable upon <i>habeas</i> review.  (Resp't Mem., at 28-30).

It is clear from the Second Department's written decision that it actually relied on the

state's contemporaneous objection rule in denying this claim on direct appeal.  <u>People v.

Jackson</u>, 796 N.Y.S.2d 543, 543 (App. Div. 2005).[12]  While the court went on to alternatively

dismiss the claim on the merits, its reliance on the state procedural rule constitutes an

independent ground for its decision.  <u>See</u> <u>Harris</u>, 489 U.S. at 264 n.10 (state court decision that

relies on a procedural rule to dismiss a claim, but which, in the alternative, also proceeds to

dismiss the claim on the merits, relies on the independent state law ground for dismissal); <u>see

also</u> <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 810 n.4 (2d Cir. 2000) (noting that when a

state court opines that a claim is "not preserved for appellate review" and then rules "in any

event" that the claim also fails on its merits, the claim rests on the adequate and independent

state law doctrine which precludes federal <i>habeas</i> review).  In addition, I note that it is well-

---

[12] The opinion reads, in pertinent part: "The defendant's claim that the verdict was
repugnant is not preserved for appellate review, as no objection was raised before the jury was
discharged.  In any event, the verdict was not repugnant." <u>People v. Jackson</u>, 796 N.Y.S.2d 543,
543 (App. Div. 2005) (internal citations omitted).

settled that a contemporaneous objection requirement constitutes an adequate state procedural ground for dismissal. See, e.g., Wainwright, 433 U.S. at 86; Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994). Such a procedural default, therefore, constitutes an independent and adequate state ground for denial of a claim and, therefore precludes this Court from considering Petitioner's claim on *habeas* review. Because Petitioner makes no showing of cause and prejudice, or a fundamental miscarriage of justice, this claim must be denied.

### d.    **Weight of the Evidence Claim**

Petitioner's related claim asserts that the verdict was against the weight of the evidence. (See Br. of Appellant, at 18-19). Although the Second Department did not specifically identify this claim in its decision, the claim was denied as meritless.[13]  However, it is well-established that a weight of the evidence claim concerns purely a question of state law, and accordingly precludes a federal *habeas* court from its review.[14]  See, e.g., McKinnon v. Superintendent, Great Meadows Corr. Facility, 355 Fed. Appx. 469, 475 (2d Cir. 2009).

### e.    **Legally Insufficient Evidence Claim**

Petitioner additionally argues that the evidence was legally insufficient to convict him of attempted murder in the first degree or reckless endangerment.  (See Br. of Appellant, at 16-17; see also Aff. in Supp. of Mot. to Vacate J., at 4-5 (unpaginated) (Ex. 12)).  Respondent contends that the state court's determination that the evidence was sufficient is neither contrary to, nor an unreasonable application of, clearly established federal law.  (See Resp't Mem., at 23-28).

---

[13] The Second Department held that all "remaining contentions are without merit." Jackson, 796 N.Y.S.2d at 543.

[14] To the extent that Petitioner's argument claims that the trial court misapplied N.Y. Crim. Proc. Law § 330.30, I note that such a claim also fails to present a federal question and is consequently unreviewable by this Court.

16

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307, 315 (1979) (internal quotation omitted).  However, on *habeas* review, a claim of legally insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  A *habeas* petitioner, therefore, "bears a very heavy burden" to show that no rational jury could have found the substantive elements of the offense beyond a reasonable doubt and succeed on such a claim. Fama, 235 F.3d at 811 (internal quotation omitted).  In addition, "when it considers the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." Id.

Petitioner has failed to establish that, at the time he was tried, no reasonable juror could have convicted him of either attempted murder in the first degree or reckless endangerment. Under New York law, a person is guilty of attempt to commit murder in the first degree when he is over the age of eighteen at the time of the crime and he intentionally attempts to cause the cause the death of a police officer who is engaged in the course of performing official duties, N.Y. Penal Law §§ 110.00, 125.27(a)(1), and is guilty of reckless endangerment when, "under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person," id. § 120.25.

The record indicates that there was sufficient evidence from which a rational jury could find each element of these offenses beyond a reasonable doubt.  At trial, the prosecution presented evidence that Petitioner was pursued on foot by uniformed police officers, that Petitioner aimed a gun at the officers, that other witnesses heard gunfire, and that numerous

17

civilians were on the street when this occurred.  The credibility of the witnesses' testimony is a decision to be made by the jury and is not reviewable by a federal *habeas* court.  See Marshall v. Lonberger, 459 U.S. 422, 434 (1983); see also United States v. Kinney, 211 F.3d 13, 18 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)) ("In analyzing a sufficiency of the evidence claim, '[w]e defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of competing inferences that can be drawn from the evidence.'").  Additionally, the mere fact that the jury also found Petitioner not guilty of possession of the gun does not make insufficient the evidence to convict on the attempted murder or reckless endangerment charges, as neither charge requires, as an element of the offense, possession of a weapon.  Accordingly, the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law and therefore the claim must be denied.

### f.    Excessive Sentence Claim

Petitioner argues that the trial court erred in its application of N.Y. Penal Law § 70.25 by imposing consecutive sentences for the two counts of attempted murder, (see Br. of Appellant, at 20-23), and also argues that the total sentence imposed was harsh, excessive, and constituted unconstitutional retaliation, (see id. at 24-28).  Respondent contends that Petitioner's claim wholly fails to state a federal question as necessary for federal *habeas* review.  (See Resp't Mem., at 31-32).

It is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also United States v. McLean, 287 F.3d 127, 136 (2d Cir. 2002) (internal quotation omitted) ("there is no constitutionally cognizable right to concurrent, rather than consecutive,

18

sentences"). Under New York law, consecutive sentences may be imposed on a criminal

defendant for the commission of two or more offenses so long as "the crimes are committed

through separate and distinct acts, even though part of a single transaction," People v. Salcedo,

92 N.Y.2d 1019, 1021 (1998), and neither act constitutes a material element of the other offense,

see N.Y. Penal Law § 70.25(1)-(2). The question of whether or not sentences can be

consecutive, however, is "purely a matter of state law and [is] not cognizable on habeas review."

Figueroa v. Grenier, 2005 WL 249001, at *15 (S.D.N.Y. Feb. 3, 2005); see, e.g., Davis v.

Herbert, 2003 WL 23185747, at *15 (E.D.N.Y. Oct. 24, 2003) ("[w]hether the sentence could be

consecutive was a matter of state law and raises no Constitutional issue"); Heath v. Hoke, 1989

WL 153759, at *3 (W.D.N.Y. Dec. 7, 1989) ("a state court's interpretation of state law on

concurrent and consecutive sentences is not a question of federal constitutional dimension

cognizable in a federal habeas corpus proceeding"); see also Charles v. Fischer, 516 F. Supp.2d

210, 224 (S.D.N.Y. 2007) (collecting cases). For the same reasons, claims based on the

"harshness" of a sentence are also unreviewable. See Charles, 516 F. Supp.2d at 224 (collecting

cases). In any event, contrary to Petitioner's argument, (see Br. of Appellant 21), the Second

Department's determination that the sentences were based on separate acts was not an

unreasonable determination of the facts in light of the evidence presented at trial, which showed

that Petitioner had fired separately at each officer. See Charles, 516 F. Supp.2d at 224 ("[t]he

firing of multiple gunshots at different victims constitutes separate and distinct acts for the

purpose of the imposition of consecutive sentences"); see also 28 U.S.C. § 2254(d)(2).

   Although Petitioner supports his argument by reference only to New York State law, he

cites People v. Simon, 580 N.Y.S.2d 493 (App. Div. 1992) for the proposition that his sentence

was excessive and "indicative of retaliation or vindictiveness." (Br. of Appellant, at 27). In

Simon, the defendant was convicted of eight counts of a criminal narcotics offense, and sentenced to five to ten years on each count, five of which were to run consecutively, and which resulted in an aggregate term of twenty-five to fifty years' imprisonment. Simon, 580 N.Y.S.2d at 494. The defendant argued that the aggregate sentence was imposed in retaliation for the exercise of his Sixth Amendment right to a trial by jury, since it far exceeded the four and one-half to nine year plea deal the People had offered before trial. Id. at 495. While the Third Department cited a Supreme Court case for the notion "that retaliation or vindictiveness may not play a role in sentencing a convicted defendant who ha[s] elected to proceed to trial," id. (internal quotation omitted) (citing Corbitt v. New Jersey, 439 U.S. 212 (1978)), the Petitioner in this case, as in Simon, has presented no evidence showing retaliation or vindictiveness by the sentencing court – indeed. Petitioner has not even presented evidence of a plea offer to support this argument. Accordingly, the claim must be denied.

### g.    **Ineffective Assistance of Trial Counsel**

Petitioner argues that he was denied the right to the effective assistance of trial counsel due to counsel's failure to pursue an alibi defense. (See Br. of Appellant, at 29-32). On direct appeal, Petitioner argued that, at the time of the shooting, Petitioner was at home with his girlfriend and that trial counsel's failure to pursue this defense failed both prongs of Strickland. The Second Department declined to review this claim as it found it a matter dehors the record. People v. Jackson, 796 N.Y.S.2d 543, 543 (App. Div. 2005). Respondent contends that this issue is now procedurally barred from federal habeas review and, in the alternative, without merit. (See Resp't Mem., at 33-35).

The Counsel Clause of the Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his

defense." U.S. Const. Amend. VI. The Supreme Court has construed this clause to afford

criminal defendants the right to the *effective* assistance of counsel. See McMann v. Richardson,

397 U.S. 759, 771 n.14 (1970). A petitioner's ineffective assistance of counsel claim will

succeed on the merits if the petitioner proves (1) that counsel's representations "fell below an

objective standard of reasonableness," as measured under "prevailing professional norms,"

Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different," id. at 694.

     *Habeas* petitioners bear the burden of proving both prongs of the Strickland test. He or

she must therefore prove that his or her attorney's actions were objectively unreasonable as well

as that he or she was prejudiced to the extent that there exists a reasonable probability that the

result of the proceeding would have been different. Strickland, 466 U.S. at 689, 693. To show

that an attorney's conduct was unreasonable, the petitioner must overcome "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. at 689. Additionally, a "fair assessment of attorney performance requires that

every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." Id. Because a petitioner may succeed only by proving both Strickland

prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address

both components of the inquiry if the defendant makes an insufficient showing on one." Id. at

697.

     Trial counsel's strategic decisions, such as in this case of whether or not to pursue an

alibi defense, cannot be determined upon a review of the trial record. See, e.g., Pratt v. Greiner,

306 F.3d 1190, 1196 n.2 (2d Cir. 2002) (under New York law, a claim of ineffective assistance

of trial counsel for failure to pursue an alibi defense is a matter dehors the record). Accordingly,

as the Second Department held in this case, under New York law, this claim could not have been

reviewed upon direct appeal, but rather, should have been raised through a state collateral

motion. See, e.g., People v. Jones, 55 N.Y.2d 771, 771 (1981) (declining to review the merits of

the ineffective assistance of trial counsel claim as a matter dehors the record). While Petitioner

subsequently did file a § 440.10 motion, he did not present an ineffective assistance of trial

counsel claim therein. (See Aff. in Supp. of Mot. to Vacate J., at 4-5 (Ex. 12)). In addition, to

the extent that this claim was raised on direct appeal to the Second Department, it was not

included in Petitioner's leave to appeal to the Court of Appeals, (see July 15, 2005 Letter to the

Clerk of the Court (Ex. 11)) (raising all issues pursued on direct appeal but omitting ineffective

assistance of trial counsel argument), and therefore has not been "fairly presented" to the state's

highest court in accordance with AEDPA. See Jordan v. Lefevre, 206 F.3d 196, 198-99 (2d Cir.

2000) (holding that when a letter in an application for leave to appeal identifies specific claims,

those grounds not mentioned in the letter are not "fairly presented" to the state's highest court);

see also id. at 199 ("Counsel may not transfer to the state courts the duty to comb through an

applicant's appellate brief to seek and find arguments not expressly pointed out in the

application for leave."); Figueroa v. Kelly, 1995 WL 702327, at *2 (S.D.N.Y. Nov. 29, 1995)

("If a petitioner limits the issues to be reviewed in a letter application to the New York Court of

Appeals, the other claims presented in his or her Appellate Division brief are not deemed

exhausted . . . [but] should be deemed procedurally forfeited for purposes of federal habeas

review where the petitioner is now barred from presenting those claims to the state court.").

This claim, therefore, remains unexhausted, albeit not procedurally barred. The Second

Circuit has concluded that, under New York law, a petitioner in these circumstances may still be able to return to state court, re-file a § 440.10 motion to vacate judgment on a claim of ineffective assistance of counsel, and thereafter appeal to the state's highest court. Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam); see also Quintana v. McCoy, 2006 WL 300470 *5 (S.D.N.Y. Feb. 6, 2006) (Karas, J.) (following Pesina). Contrary to Respondent's assertion, therefore, under Pesina, this Court cannot deem this claim exhausted and dismiss it as procedurally defaulted. A review of the claim, however, indicates that it is appropriate to deny it on the merits pursuant to 28 U.S.C. § 2254(b)(2). See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Rhines v. Weber, 544 U.S. 269, 277 (2005) (A federal court may exercise discretion and proceed to review the merits of unexhausted claims within a mixed petition containing both exhausted and unexhausted claims, if such claims are "plainly meritless"); see also Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims within a mixed petition); Quintana, 2006 WL 300470, at *6 (reviewing and denying claim on the merits despite holding claim could not be dismissed as unexhausted but procedurally barred).

Petitioner's contention that trial counsel was ineffective simply for failing to pursue an alibi defense and call to trial Petitioner's girlfriend does not meet his burden to show that this constituted objectively unreasonable conduct. See Strickland, 466 U.S. at 689 (decisions that "might be considered sound trial strategy" do not reflect ineffective assistance of counsel); see also, e.g., United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (quoting United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997)) ("counsel's decision as to 'whether to call specific

23

witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation'"); United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (internal quotation omitted) ("[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial"); United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992) (internal quotations omitted) (allegations that "fall squarely within the ambit of trial strategy . . . , if reasonably made, cannot support an ineffective assistance claim"); United States v. Helgesen, 669 F.2d 69, 72 (2d Cir. 1982) (explaining the "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"); Singleton v. Duncan, 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006) (citing Jones v. Barnes, 463 U.S. 745, 752 (1983)) ("a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy"). Petitioner here offers no evidence – other than a bald assertion that counsel was ineffective for his failure to pursue this defense – to show that this decision constituted unsound trial strategy. See, e.g., Deans v. Ercole, 2010 WL 1010743, at *7 (E.D.N.Y. Mar. 15, 2010) (collecting cases, rejecting *habeas* petitioner's unsupported claim that trial counsel was inept for failing to call petitioner's girlfriend as an alibi witness, noting that petitioner offered no evidence that the girlfriend even would have testified, and citing various potential, strategic reasons for the decision not to pursue this defense). Accordingly, because Petitioner cannot meet the first prong of Strickland, the claim must be denied.[15]

---

[15] Moreover, I note that Petitioner presents no argument which plausibly suggests that the outcome of the proceeding would have been different. Given the plethora of eyewitnesses who placed Petitioner at the scene at about 11:00 p.m., the testimony of Petitioner's girlfriend – whom Petitioner asserts had fallen asleep at 9:30 p.m. – does not establish a reasonable probability that the verdict would have been an acquittal on all counts. (See Br. of Appellant, at 29).

24

## 2.   *Claim Raised in § 440.10 Motion: Jury Instructions*

In his § 440.10 motion, Petitioner argued that the court's charge to the jury violated his

due process. (See Aff. in Supp. of Mot. to Vacate J., at 4-5 (unpaginated) (Ex. 12); Reply to

People's Opp. to Vacate J. of Conviction, at 2 (unpaginated) (Ex. 14)). In its written decision

and order, the state court held that Petitioner had procedurally defaulted on the claim, which was

based on the record, but not argued on direct appeal, pursuant to N.Y. Crim. Proc. Law §

440.10(2)(a), (c).[16] (Feb. 20, 2007 Decision and Order (Ex. 15)). Because a procedural default

based on § 440.10(2) constitutes an independent and adequate state law ground for the denial of

this claim, see, e.g., Trottie v. Mantello, 1999 WL 187202, at *4 (S.D.N.Y. Apr. 6, 1999)

(internal quotation marks omitted) ("[f]ederal courts have continuously held that the failure to

comply with [N.Y. Crim. Proc. Law] § 440.10 is an independent and adequate state ground to

dismiss a writ of federal habeas corpus"), this Court is now precluded from its review.

Through his incorporated *error coram nobis* petition, Petitioner asserts ineffective

assistance of appellate counsel for this default. (See Mem. of Law (Docket No. 15)). However,

because I find that appellate counsel was not deficient, see Discussion, infra, Part III(D)(3),

---

[16] A motion to vacate the judgment of conviction must be denied when:

> Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

N.Y. Crim. Proc. Law § 440.10(2)(c). Similarly, a motion to vacate the judgment of conviction must also be denied when: "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such an issue." Id. § 440.10(2)(a).

Petitioner cannot establish cause, and accordingly, the claim must be denied as procedurally barred.[17]

### 3.    Error Coram Nobis *Claim: Ineffective Assistance of Appellate Counsel Claim*

Petitioner argues that he was denied the right to the effective assistance of appellate counsel because of counsel's failure to argue on direct appeal "a winning issue that would have required a reversal of the conviction," (Aff. ¶ 22 (Docket No. 14)), specifically, that the trial court's charge to the jury violated federal due process, (see Mem. of Law (Docket No. 15)). Petitioner also asserts that he had specifically asked his attorney to include this issue in the brief, that the attorney ignored repeated requests to communicate with him, and did not allow Petitioner to review the brief prior to submission.  (Aff. ¶¶ 24, 26-29; see Mem. of Law, at 4). Finally, Petitioner asserts that counsel was generally incompetent for his infrequent citation to trial transcripts, failure to identify weaknesses in the State's case, incorrectly arguing points of law, ineffectively ordering the arguments within the brief, and not complying with the Second

---

[17] I also note that, within his incorporated *error coram nobis* petition, Petitioner alleged that appellate counsel had refused to communicate with him and that Petitioner had, at one point, written a letter to counsel specifically requesting that he include this due process claim in his appellate brief.  (See Aff. ¶ 24 (Docket No. 14)).  Petitioner cites a November 30, 2004 letter, and although no such letter appears in the record, I note that a November 29, 2004 letter from Petitioner to counsel does state that Petitioner wished to discuss with counsel several issues he wanted raised in the brief.  (See Nov. 29, 2004 Letter (Ex. 20)).  However, neither this letter, nor any other, appears to identify this specific claim.  (See generally Ex. 20).  Petitioner also asserted in his *error coram nobis* petition that he attempted to raise this specific issue on direct appeal, but was denied leave to file a supplemental *pro se* brief by the Second Department.  (See Aff. ¶ 25; Mar. 16, 2005 Decision and Order on Motion (Ex. 20)).  However, the materials in the record do not show Petitioner actually argued this claim in his motion for leave.  (See Ex. 20).  To the extent that other circuits have held that a claim can be fairly presented, or that cause may be established, where a petitioner has presented the claim to the state's courts via an unsuccessful motion for leave to file a supplemental *pro se* brief, Custer v. Hill, 378 F.3d 968, 974-75 (9th Cir. 2004); Clemmons v. Delo, 124 F.3d 944, 948-49 (8th Cir. 1997); Hatcher v. Schriro, 2008 WL 2397338, at *10 (D. Ariz. Mar. 26, 2008), as discussed below, such an argument is academic and rendered moot because, on the merits, the claim does not warrant *habeas* relief.

Department's rules concerning the form and content of briefs. (Mem. of Law, at 4-7). Respondent contends that the Appellate Division's denial of this claim is not contrary to, or an unreasonable application of, clearly established federal law. (See Resp't Supp. Mem., at 2-9 (Docket No. 21)).

The state court's finding that appellate counsel was not ineffective for failure to argue the due process claim on direct appeal is not contrary to, nor an unreasonable application of, Strickland.[18] It is clear that appellate counsel cannot be deficient for failure to raise a meritless argument. Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001). It is true that the Fifth Amendment provides a right to a criminal defendant's indictment by grand jury, U.S. Const. amend V, and that "after an indictment has been returned [the Fifth Amendment provides that] its charges may not be broadened through amendment except by the grand jury itself," Stirone v. United States, 361 U.S. 212, 215-16 (1960). However, this right never been incorporated to the states. Hurtado v. California, 110 U.S. 516 (1884); see LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002). Furthermore, I find no federal precedent – and indeed, Petitioner provides none – to support the contention that due process is violated when a court fails to instruct the jury on an element of an offense simply because that element is alleged as part of the State's overall *theory* at trial. (See Br. of Appellant, at 19); see also, e.g., Fernandez v. Breslin, 2001 WL 197034, at *2 (S.D.N.Y. Feb. 27, 2001). Counsel's omission of this federal claim on direct appeal was therefore not unreasonable. See, e.g., LanFranco. 313 F.3d at 118; Breland v. Artus, 2006 WL 845474, *13 (E.D.N.Y. Mar. 29, 2006).

---

[18] Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel. See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

It is also well-established that appellate counsel need not raise every non-frivolous argument on appeal.  See Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)) ("[a]ssigned appellate defense counsel is not required to raise every non-frivolous issue on appeal").  While the Sixth Amendment right to counsel may be violated through counsel's failure to raise a "significant and obvious" state law claim, Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), counsel's failure to argue on direct appeal that the grand jury's indictment had been amended improperly pursuant to state law cannot be said to have changed the result of the proceedings.  Under the New York State Constitution, "[n]o person shall be held to answer for a . . . crime . . . unless on indictment of a grand jury."  N.Y. Const. Art. I, § 6.  State statute provides further that "[a]n indictment may not be amended . . . which changes the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed it."  N.Y. Crim. Proc. Law § 200.70(2).  While the prosecution's theory of the crimes involved in Petitioner's case may have included use of the gun found at the scene, unlike the other charges, the indictment did not include a reference to the gun with respect to the attempted murder or reckless endangerment charges.  (See Indictment (Ex. 1)).  Furthermore, to the extent that the Bill of Particulars specifically mentioned the .32-caliber gun with respect to all of the charged offenses, (Ex. 20), the New York Court of Appeals has made clear that the state "need not prove allegations in an indictment that are extraneous to the material elements of the offense charged."  People v. Cook, 61 N.Y.2d 321, 327 (1998).  Therefore, because the method by which Petitioner attempted to commit murder is not an essential element of the offense, the trial jury's charge represented the same theory that had been presented to the grand jury.  See, e.g., People v. Rooney, 57 N.Y.2d 882 (1982) (conviction for criminally negligent homicide upheld where indictment alleged the homicide was committed while defendant drove

28

drunk, despite jury's acquittal on driving under the influence charge); People v. Kaminski, 58

N.Y.2d 886 (1983) (new trial ordered where jury was charged as to both definitions of "forcible

compulsion," but where indictment specifically alleged that only one kind of forcible

compulsion had occurred).  Furthermore, to the extent that Petitioner complains that appellate

counsel omitted this stronger issue while pursuing weaker arguments involving the identification

procedure, determination of competency, and ineffective assistance of trial counsel claims, (see

Mem. of Law, at 5-6), I note that Petitioner himself raises these claims and uses the same brief

prepared by appellate counsel to present them in his *habeas* petition.

The state court's decision also cannot be said to be contrary to, or an unreasonable

application of, clearly established federal law with respect to Petitioner's allegations that counsel

was deficient for his lack of communication with Petitioner.  "Although it may be desirable and

productive, the Constitutional right to effective assistance of counsel does not encompass the

requirement that an attorney consult with his client to discuss the alleged trial errors that his

client wishes to pursue." McIntyre v. Duncan, 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8,

2005); see also, e.g., Warren v. Napoli, 2009 WL 2447757, at *18 (S.D.N.Y. Aug. 10, 2009)

(failure to discuss contents of appellate brief prior to filing does not warrant *habeas* relief on

ineffective assistance of counsel claim); Campbell v. Greene, 440 F. Supp.2d 125, 152

(N.D.N.Y. 2006) (no *per se* ineffective assistance of appellate counsel for failure to

communicate with client); Buitrago v. Scully, 705 F. Supp. 952, 955-56 (S.D.N.Y. 1989))

(same).

Finally, Petitioner, cannot establish that the result of the proceeding would have been

different had appellate counsel spoken to Petitioner, included the due process claim in the

appellate brief, or somehow submitted a more orderly or detailed brief. (See Mem. of Law, at 4-

7); see also, e.g., Ward v. Kuhlman, 2007 WL 2907353, at *10 (N.D.N.Y. 2007) (rejecting _habeas_ claim of ineffective assistance of appellate counsel due to the poor "quality of the appellate brief").  As the Second Department noted in its opinion, the evidence of guilt at trial was legally sufficient to support the convictions and the trial court acted within state law in imposing consecutive sentences.  People v. Jackson, 849 N.Y.S.2d 164 (App. Div. 2008). Accordingly, this claim must be denied.

## IV.  CONCLUSION

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: <u>December 23</u>, 2010
       White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Kenneth M. Karas
United States Courthouse
300 Quarropas Street
White Plains, New York  10601

Christopher Jackson, *pro se*
02-A-2655
Shawangunk Correctional Facility
200 Quick Road
P.O. Box 750
Wallkill, NY 12589-0750

Andrew R. Kass, Esq.
Office of the Orange County Attorney
255 Main Street, County Government Center
Goshen, NY 10924